<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JAMES NICHOLAS KARIM CAINES, | \| | Hon. Stanley R. Chesler |
| | \| | Civ. No. 05-1701 |
| Plaintiff, | \| | |
| | \| | |
| v. | \| | **OPINION** |
| | \| | |
| ROY L. HENDRICKS, et al., | \| | |
| | \| | |
| Defendants. | \| | |

**<u>CHESLER</u>**, **<u>District Judge</u>**

This matter comes before the Court upon the motion of Defendants Roy L. Hendricks and Donald Mee, Jr. (collectively "Defendants") for summary judgment (docket item # 15). For the reasons set forth below, the Court will **GRANT** in part and **DENY** in part Defendants motion.

**I.     BACKGROUND**

Plaintiff, James Nicholas Karim Caines, is an inmate in custody at New Jersey State Prison ("NJSP") in Trenton, New Jersey. The allegations that form the basis for his Complaint concern the treatment and medical care he received for his injured clavicle while in custody at NJSP.

Plaintiff named as Defendants Roy Hendricks, former administrator of NJSP and Donald

1

Mee, assistant superintendent of NJSP[1].   Plaintiff claims that Defendants failed to resolve continuous grievances involved in obtaining the proper medical attention.

**A.**     **Facts**

On December 7, 2003, Plaintiff injured his clavicle while playing football. (Aff. Of George Riehm ("Riehm Aff") Ex. A.; Compl. at 19.)  Prior to the filing of this lawsuit Mr. Caines made approximately 14 visits to the prison infirmary with specific complaints about his shoulder.  (Riehm Aff. Ex. A.)  The visits span from December 8, 2003 until March 28, 2005.  (Id.)  On February 27, 2004, Mr. Caines was seen by Dr. Paul Talbot.  In the Consultation Report, Dr. Talbot assessed Mr. Caines shoulder pain as "Acromoclavicular separation and bursitis with R/O rotator cuff tear . . . Acromioclavicular joint separation, right."  (Id.)  The Report laid out a plan of treatment including an MRI to the R/O tear which was listed as "pending."  (Id.)

Another orthopedics consultation was done on July 15, 2004 by Dr. Lawrence Donkor.  Dr. Dokor's assessment stated, "[c]oncerned about Rotator cuff tear. . . [n]eed to get MRI of Rt. shoulder."  Mr. Caines was seen again on August 9, 2004 complaining of shoulder pain and then again on January 26, 2005.  As of March 28, 2005, Mr. Caines still had not received an MRI and was still complaining of right shoulder pain.  At his March 28, 2005 visit, Mr. Caines was seen by Dr. Hanna Manar.  Dr. Manar noted on his chart under the heading "Plan," "Rt shoulder MRI, as per ortho request."

---

[1] Plaintiff also named as Defendants: Malaka Urmani, the hospital administrator, Dr. George E. Achebe, Dr. Paul Talbot, and Dr. Zhu-Fing Chang.  This motion, however, concerns only Defendants Hendricks and Mee.

Plaintiff submitted several Inmate Request Forms and Administrative Remedy Forms for which he received responses from the medical department.  (See Compl.)  Specifically, on December 14, 2003 Plaintiff submitted an Administrative Remedy Form stating he was not receiving the proper medical attention.  (Id.)  Correctional Medical Services ("CMS")  responded by stating that Plaintiff had seen a doctor on December 8, 2003, and his medication was ordered.  On July 5, 2004, Plaintiff submitted another Administrative Remedy Form regarding his injury and complained that he was still experiencing pain.  (Mee Aff.,  ¶¶ 8-11.)  CMS responded and stated that the inmate was seen on July 23, 2004 and an MRI was ordered but an X-ray must be done first.  Therefore, the x-ray was scheduled for the next week.  (Id.)

On August 6, 2004, Plaintiff submitted an Administrative Remedy Form regarding the fact that he had not received an MRI.  (Compl.)  A nurse responded and stated that the consult was being reviewed by the regional office and when the date is given Plaintiff would be scheduled for testing.  (Mee Aff., ¶¶ 8-11.)

On August 17, 2004, Plaintiff submitted an Administrative Remedy Form regarding the fact that he had still not received an MRI.  (Compl.)  A nurse responded by stating that the consult is being reviewed and when a date is scheduled Plaintiff would be notified.  (Mee. Aff. ¶¶ 8-11.)

Five months later, on January 21, 2005, Plaintiff submitted an Administrative Remedy Form stating that he was still experiencing  pain in his right shoulder. (Compl.)  An appointment was scheduled for Plaintiff to discuss his concern.  Plaintiff had still not received an MRI.  On February 1, 2005, Plaintiff submitted an Administrative Remedy Form regarding his MRI.  (Compl.)  Plaintiff was scheduled to be seen on February 11, 2005 to address his concern.

Pursuant to N.J.A.C. 10A: 8-1.1 to 3.6, NJSP has adopted an Inmate Handbook which sets forth the rights and privileges of its inmates. (Aff. Of Donald Mee ("Mee Aff."), ¶ 2.) The Handbook sets forth Administrative Remedy procedures by which the inmate population can bring complaints, problems and suggestions to the attention of the Administration of the NJSP. (Id.) Once received, forms are delievered to the administrative area to be processed by Frank Bruno. (Id. ¶ 7.) Once Mr. Bruno receives the remedy form, it is reviewed and distributed to the appropriate department within the prison. A response is prepared and forwarded to an assistant supervisor to review and co-sign. The form is then returned to Mr. Bruno and he forwards to the response to the inmate. (Id. ¶¶ 9-11.)

The forms submitted by Mr. Caines were referred to the medical department for a response. (Mee Aff. ¶12.) Defendant Mee would then review the forms to ensure that they were responded to and co-sign the form before it was returned to Mr. Bruno and then forwarded to the inmate. (Id.)

**B.     Procedural History**

Plaintiff filed the Complaint in this matter on March 28, 2005 alleging that Defendants failed to provide him with proper medical treatment. On July 14, 2005 Defendants filed the instant motion for Summary Judgment arguing that (1) Plaintiff's Complaint must be dismissed because it is based upon a theory of respondeat superior and (2) summary judgment should be entered in favor of Defendants because they were not deliberately indifferent to Plaintiff's medical condition.

**II.     DISCUSSION**

**A.     Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, (1986); Kreschollek v. Southern Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The Supreme Court has stated that in evaluating a defendant's motion for summary judgment:

> [t]he judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of evidence that the plaintiff is entitled to a verdict . . . .

Anderson, 477 U.S. at 252. A fact is "material" only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. See id.

Once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586; see also Anderson, 477 U.S. at 247-48. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993).

B.  **Defendants' Motion for Summary Judgment**

   1.  Defendant Hendricks is Entitled to Summary Judgment Because Plaintiff's Claims are Based upon a Theory of Respondeat Superior

Defendant Hendricks argues that Plaintiff's claims as against him must be dismissed because they are based solely upon a theory of respondeat superior. Defendant argues that Plaintiff has not shown that Defendant Hendricks possessed any actual knowledge or, or acquiesced to any violation of Plaintiff's rights. (Def. Br. 7.) Plaintiff's allegations against Defendant Hendricks are stated as, "[f]ailure to oversee the proper resolution to a continuous grievance for medical attention, which was address to his office." (Compl. at 4.) Plaintiff's brief does not address the instant argument.

Supervisory liability under Section 1983 cannot be predicated solely upon a theory of respondeat superior. See Polk County v. Dodson, 454 U.S. 312, 325 (1981).

> A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however must be made with appropriate particularity.

Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); see Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3d Cir. 1995). A plaintiff must show that the supervisor "participated in violating [the plaintiffs'] rights, or that he directed others to violate them, or that he, as the person in charge . . . had knowledge or an acquiesced in his subordinates' violations." Baker, 50 F.3d at 1190-91.

Defendant Hendricks is not involved in the processing or handling of inmate grievances. (Hendricks Aff., ¶¶ 2-5). The record before this Court is completely devoid of any evidence that Defendant Hendricks participated in the alleged violation of Plaintiff's constitutional rights or had actual knowledge and acquiesced to any violation of Plaintiff's rights. Accordingly, Plaintiff's claims against Defendant Hendricks must be dismissed and summary judgment for Defendant Hendricks must be granted.

    2.    <u>Defendant Mee is Not Entitled to Summary Judgment on this Record</u>

Plaintiff brings this § 1983 action alleging that Defendants violated his Eight Amendment rights by failing to resolve continuous grievances involved in Plaintiff obtaining the proper medical attention. (See Complaint Generally.) Defendants argue that this assertion is meritless because Plaintiff received continuous medical treatment at NJSP. (Riehm Aff.., Ex. A.) Additionally, Defendants argue that as non-medical prison officials, they cannot be found deliberately indifferent to Plaintiff's medical needs on these facts. (Def. Br. 4.)

It is well settled that inadequate medical care can rise to the level of cruel and unusual

7

punishment under the Eight Amendment.  Estelle v Gamble, 429 U.S. 97 (1976).  In Estelle, the Supreme Court held that the Eight Amendment is violated by "deliberate indifference to [a prisoner's] serious medical needs."  Id. at 104-06.  To state a cognizable medical mistreatment claim, a prisoner must allege (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Id.; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference is a subjective standard and requires proof that the official "[knew] of and [disregarded] an excessive risk to inmate health or safety."  Farmer v.  Brennan, 511 U.S. 825, 837 (1994).  To be deliberately indifferent, the defendants must have known of the serious medical need at issue, and they must consciously disregard that need as to inflict cruel and unusual punishment upon the prisoner.  Farmer, 511 U.S. at 837-38.  The Third Circuit has found deliberate indifference in situations where (1)  there was "objective evidence that [a] plaintiff had serious need for medical care," and prison officers ignored that evidence, and (2) where "necessary medical treatment [was] delayed for non-medical reasons."  See  Nicini v. Morra,, 212 F.3d 798, 815 n. 14;  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326.

The Third Circuit, however, has held that non-medical prison officials will generally not be considered deliberately indifferent where they fail to respond to prisoner complaints regarding medical treatment.  See Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); Spruill v Gillis, 372 F.3d 218 (3d Cir. 2004).  In Durmer, the Court reviewed the decision of a District Court Judge to grant defendants summary judgment.  In the lower court, the Durmer plaintiff had filed a civil rights action against medical personnel, and two Administrators; William Fauver, the

Commissioner of the New Jersey Department of Corrections, and Robert Baker, the Superintendent of Mid-State Correctional Facility. The basis of the claim against Fauver and Barker was that these defendants failed to respond to complaints of the plaintiff regarding his medical treatment. The District Court Judge granted defendants' motion for summary judgement. On appeal, the Third Circuit upheld the dismissal as to Fauver and Barker stating that, "[n]either of these defendants . . . is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison physician." <u>Durmer</u>, 991 F.2d at 69.

In <u>Spruill</u>, on similar facts, the Third Circuit restated its holding in <u>Durmer</u> and went on to state that,

> If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. . . . Holding a non-medial prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. . . .
>
> [A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable under the Eight Amendment scienter requirement of deliberate indifference.

372 F.3d at 236.

Here, Defendant Mee argues that his conduct does not demonstrate a sufficiently culpable state of mind. Mee is not a physician and did not provide any specific medical care to the Plaintiff . Defendant argues that the facts of <u>Durmer</u> compel this Court to conclude that as a non-medical prison official, Defendant Mee is entitled to summary judgment. This Court disagrees. The plaintiff in <u>Durmer</u> wrote letters to the non-medical defendants expressing

9

complaints about his continued lack of physical therapy. The Third Circuit held that the lack of response from these non-medical defendants did not constitute deliberate indifference. Durmer, 991 F.2d at 69. The same conclusion, however, is not compelled upon this record where Mr. Caines was not, in fact, sending letters to the prison officials, but rather was following an administrative grievance policy put in place by the prison.

In Durmer and Spruill, the Third Circuit stated that non-medical prison officials will generally not be liable under the deliberate indifference standard. The Court, however, also held that non-medical prison officials escape liability only absent evidence that the prison official had "reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." Spruill, 372 F.3d at 236.

On this record, however, there is a factual issue as to whether Defendant Mee knew, or could have known, that Plaintiff was not receiving treatment as recommended by prison physicians. Plaintiff submitted seven Administrative Remedy Forms, five of which specifically mention the fact that Plaintiff had not received an MRI as prescribed by prison doctors. (See Documents Attached to Plaintiff's Complaint.) Plaintiff's Administrative Remedy Form of July 5, 2004 specifically states, "The orthopedic doctor has requested for me to have an MRI done, for which I have not received. The order was placed back in February of this year." (Id.) On January 21, 2005, approximately 11 months after Plaintiff's MRI was ordered, Defendant Mee received another Administrative Remedy Form by Plaintiff complaining that he had still not received his MRI. (Id.) The record before this Court contains sufficient evidence to create a factual issue as to whether Defendant Mee had reason to believe that the prison doctors were not treating Mr. Caines. Accordingly, Defendants motion for summary judgment will be denied.

### III. Conclusion

For the foregoing reasons, the Court will **GRANT** in part and **DENY** in part Defendants' Motion for Summary Judgment.  An appropriate form of order will be filed herewith.

     s/ Stanley R. Chesler
Stanley R. Chesler, U.S.D.J.