UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                            :
JAMES NICHOLAS KARIM CAINES, IV,  :
                                            :
       Plaintiff,       :       Civil Action No. 05-1701 (JAP)
                                            :
   v.                           :       **OPINION**
                                            :
ROY HENDRICKS, et al.,         :
                                            :
       Defendants.     :
                                            :
_____ :

Appearances:

James Nicholas Karim Caines, IV
Prison #296557, SBI #562356B
New Jersey State Prison
PO Box 861
Trenton, NJ 08625
    *Pro Se*

Sarah Brie Campbell, Esq.
Office of the NJ Attorney General
Department of Law & Public Safety
RJ Hughes Justice Complex, PO Box 112
Trenton, NJ 08625
    -and-
James R. Birchmeier, Esq.
Powell, Birchmeier & Powell, Esqs.
1891 State Highway 50, PO Box 582
Tuckahoe, NJ 08250-0582
    *Attorneys for Defendant Mee*

David J. Bishop, Esq.
Crammer, Bishop, Marczyk & O'Brien, Pc
508 New Jersey Avenue, Suite B3
Absecon, NJ 08201
    *Attorney for Defendants Umrani, Achebe, Chang and Talbot*

PISANO, District Judge.

Plaintiff is a *pro se* litigant who filed this action on March 20, 2006, alleging that certain administrative and medical personnel at the New Jersey State Prison violated his civil rights under 42 U.S.C. § 1983. Plaintiff alleges that he received inadequate medical care for an injury he received while playing football in the prison recreation yard. Specifically, plaintiff complains that medical personnel never performed an MRI on his injured shoulder.

Defendants Malaka Umrani, R.N., George Achebe, M.D., Zhu-Ping Chang, M.D., and Paul Talbot, M.D. (herein referred to as the "Medical Defendants") have filed a motion for summary judgment arguing that plaintiff cannot establish an Eighth Amendment violation of deliberate indifference to a serious medical need and plaintiff has not exhausted his administrative remedies. Defendant Donald Mee, an Assistant Superintendent at New Jersey State Prison, has filed a motion for summary judgment similarly arguing that plaintiff cannot establish an Eighth Amendment violation for medical deliberate indifference and also that plaintiff's claims are improperly based upon a theory of respondeat superior liability. For the reasons set forth herein, defendants' motions shall be granted and plaintiff's complaint shall be dismissed.

I.  Background

Plaintiff is presently incarcerated at New Jersey State Prison serving a 40-year sentence for robbery, conspiracy and felony murder. On December 7, 2003, plaintiff fell while playing football in the prison yard and two other inmates fell on top of him. Afterwards, he went to his bunk to lie down but had difficulty getting back up due to pain in his shoulder. *See* Affidavit of Sarah Campbell at Ex. C (Deposition Transcript of James Caines) (hereinafter referred to as "Dep. Tr.") at 57:13-18.

Plaintiff received an emergency pass to medical where he was examined by a nurse.[1] Affidavit of George Riehm ("Riehm Aff.") at Exh. A at EMR1.  Medical records show that this examination revealed swelling and tenderness to plaintiff's right clavicle.  *Id.*  The nurse called defendant Dr. Chang, who ordered that plaintiff be placed in a sling, medicated with Darvocet, and sent to the infirmary to be reevaluated by a physician the next morning.  *Id.* at EMR1-4.

On December 8, 2003, defendant Dr. Achebe examined plaintiff.  Medical records indicate that plaintiff was able to move all of his extremities without limitation and did not suffer from any joint enlargement or tenderness.  *Id.* at EMR9.  Dr. Achebe diagnosed plaintiff with a contusion to his right shoulder.  Plaintiff testified at his deposition that the doctor told him he would be scheduled for an x-ray later that day, and plaintiff was discharged from the infirmary and given medication (Motrin) for his pain.  Plaintiff was also seen on this same date by a nurse and pain medication was provided per orders.  *Id.*

On December 14, 2003, plaintiff submitted a Health Services Request Form ("HSRF") stating that he did not receive an x-ray he alleged was previously ordered.  That same day plaintiff also submitted an Administrative Remedy Form ("ARF") stating that he was "[n]ot receiving the proper medical attention."  Complaint at 33-34.  The written response to the ARF was from defendant Umrani and stated that the plaintiff "was seen by Dr. Achebe on 12/8/03 for an injury to clavicle.  Assessment completed and medication ordered.  Dx contusion to right shoulder."  *Id.*  Pursuant to the Department of Corrections ("DOC") grievance procedure, defendant Mee signed the ARF on January 2, 2004, as confirmation that plaintiff's grievance had been responded to by the medical department.  Affidavit of Donald Mee at ¶¶ 9-16.

---

[1] Medical care is provided to inmates at facilities within the New Jersey Department of Corrections by Correctional Medical Services, Inc., not a party heerin.  Affidavit of George Riehm ("Riehm Aff.") at ¶ 1.

On December 20, 2003, plaintiff was seen by a nurse for a renewal of his medication. The next day, plaintiff, complaining of pain and requesting an x-ray, was again seen by a nurse. Riehm Aff., Ex. A at EMR11-13. A few days later, on December 26, 2003, plaintiff was seen by a physician, defendant Dr. Talbot, for a follow-up regarding his shoulder injury. *Id.* at EMR15. Dr. Talbot noted that plaintiff complained of pain but continued to do his regular job and was not wearing any support for the shoulder. Dr. Talbot diagnosed a right shoulder strain/sprain and prescribed Motrin and an analgesic balm. Medical records show that Dr. Talbot planned to obtain an x-ray and follow-up with plaintiff in two months. *Id.*

On January 5 and January 6, 2004, respectively, plaintiff submitted HSRFs complaining that he was "still having pain due to December 7, 2003 injury" and that the "medication is not working." Plaintiff also stated that he is "still awaiting to be scheduled for an x-ray." Certification of David Bishop ("Bishop Cert.") at Ex. B. The written response to the January 5th HSRF states that plaintiff was referred to a physician. *Id.* The written response to the January 6th HSRF states that plaintiff was seen on December 26, 2003 for a shoulder strain. *Id.*

On January 6, 2004, plaintiff was seen at sick call by a nurse complaining that he was still having pain. Medical records state that the nurse's plan was to "refer to MD." Riehm Aff. at EMR18. Plaintiff was scheduled for a follow-up on January 8, 2004. *Id.*

In an HSRF dated January 11, 2004, plaintiff complains that he is "still having pain in [his] clavicle and deltoid" and that he is still "awaiting an x-ray and MRI." Bishop Cert. at Ex. B. On January 12, 2006, plaintiff was again seen at sick call by a nurse for pain in his right shoulder. Plaintiff complained that his pain medication was not working and requested an x-ray. Plaintiff was scheduled for follow-up at the medical clinic for January 14, 2004. Riehm Aff. at EMR20.

On February 4, 2004, plaintiff was seen by a nurse at sick call complaining of continuing shoulder pain and a new pain to his neck. Plaintiff again complained that he had not had an x-ray. Plaintiff was referred to a physician for a follow-up. *Id.* at EMR22.

On February 10, 2004, plaintiff completed an HSRF complaining that he is "still having pain in right clavicle as well as pain in my deltoid and neck." Bishop Cert. at Ex. B. On February 11th, plaintiff was seen by a nurse, and the nurse noted that plaintiff was scheduled to see a physician. Riehm Aff. at EMR24. Later that same day plaintiff was seen by Dr. Talbot. Dr. Talbot's assessment continued to be right should sprain/strain. Medical records show that Dr. Talbot continued plaintiff on Motrin and analgesic balm, and planned to have an MRI done on plaintiff's right shoulder as well as get an orthopedic consult. Dr. Talbot also entered a work restriction for plaintiff. *Id.* at EMR26-29.

On February 26, 2004, plaintiff's was seen by an orthopedic physician. The orthopedic physician's assessment was acromoclavicular joint separation and bursitis. Plaintiff's treatment plan included performing an MRI to rule out a rotator cuff tear, shoulder x-rays and a prescription for pain medication (Tylenol). *Id.* at EMR30.

On April 5, 2004, an x-ray taken of plaintiff's shoulder was normal. *Id.* at EMR32. Shortly thereafter, on April 19, 2004, plaintiff completed a HSRF complaining of "pain in [his] shoulder and clavicle" and stating that his "pain medication is not working." Bishop Cert. at Ex. B. On April 21, plaintiff was seen by a nurse for continued pain in his right shoulder. Plaintiff complained that his pain medication was not working. The nurse noted that the medication plaintiff had been previously prescribed was Motrin, Tylenol and an analgesic balm. The nurse further noted that plaintiff's x-ray was normal, but referred plaintiff to a physician for a consultation. Riem Aff. at EMR33.

The next day plaintiff was seen by a physician. Plaintiff complained of pain in his right shoulder and advised the doctor that he was waiting for an MRI and inquired as to its status. The doctor noted in the records that plaintiff was to continue his medication and that an "MRI is being scheduled." *Id.* at EMR35.

On May 7, 2004, plaintiff completed a HSRF complaining of right shoulder pain. Plaintiff also noted that he had an x-ray done but he was still awaiting an MRI. Bishop Cert. at Ex. B. Shortly thereafter, on May 11, 2004, plaintiff was at sick call seen by Dr. Talbot. Plaintiff complained that he was still having right shoulder pain which the analgesic balm helped relieve but the medication did not. Dr. Talbot's assessment was a right shoulder sprain, and he refilled the analgesic balm and Tylenol. The doctor also temporarily restricted plaintiff to a lower bunk only. Plaintiff was advised to return as needed. Riehm Aff. at EMR 40.

On May 12, 2004, apparently in preparation for an MRI, Dr. Talbot ordered an x-ray of plaintiff to determine if there were any foreign objects in his body. *Id.* at EMR43.

On May 21, 2004, plaintiff was seen again by an orthopedic physician. The doctor's assessment was degenerative joint disease of the acromioclavical joint and possible separation with impingement. It was noted that plaintiff had x-rays but the films were unavailable for the doctor's review. *Id.* at EMR44. The doctor gave plaintiff three options for treatment: (1) a hydrocortisone shot to the shoulder; (2) therapy; or (3) "exploratory surgery." Dep. Tr. at 118:17-20. Plaintiff refused all three options. *Id.*

On June 4, 2004, Dr. Talbot entered a note in plaintiff's medical records that shows that a left hip x-ray was done on May 27, 2004. The x-ray was normal. Riehm Aff. at EMR46.

On July 5, 2004, plaintiff submitted an ARF stating that he still has not received the MRI that the orthopedic physician wanted, and requested that the "matter be resolved." Bishop Cert.

at Ex. C. The response, written by defendant Umrani on July 29th, indicated that plaintiff was seen by the orthopedic physician on July 23, 2004, and an MRI was ordered. It also indicated that further x-ray must be done before the MRI could be done, and the x-ray would be scheduled for the following week. Defendant Mee signed the ARF on August 4th, confirming that the medical department had responded to the plaintiff's concern. *Id.*

On July 15, 2004, plaintiff was seen by the orthopedic physician. This physician assessed a possible rotator cuff tear. Physical therapy was recommended as well as pain medication as needed, along with a follow-up MRI. *Id.* at EMR47. According to plaintiff, he was scheduled for an MRI around this time, but it was cancelled on pending reevaluation of plaintiff's condition by another doctor. Dep. Tr. 132:21-23.

On August 6, 2004, plaintiff (unaware that his MRI had been cancelled) completed both an ARF and an HSRF complaining that had not received the MRI that was ordered. Bishop Cert. at Ex. B. The September 28, 2004 written response from the medical department to the HSRF indicated that plaintiff's "consult is being reviewed by Regional Office - when a date is given client will be scheduled for testing." *Id.* This ARF was signed by defendant Mee on September 29, 2004, to confirm that the medical department had responded to the plaintiff's issue.

On August 9, 2004, plaintiff seen by a nurse at sick call for pain in his shoulder. The notes by the nurse state that plaintiff is awaiting an MRI and an orthopedic consult is pending. Also noted was that a physical therapy consultation had been ordered. Riehm Aff. at EMR49.

On August 17, 2004, plaintiff filed an ARF in which plaintiff again requested an MRI, stating that he had already undergone the requisite x-ray examinations. Bishop Cert. at Ex. C. A written response was provided on September 28th, which stated that the "diagnostic test consult is being reviewed, when date is received appointment will be scheduled." *Id.* This ARF was

7

signed by defendant Mee on September 29, 2004, to confirm that the medical department had responded to the plaintiff's issue. *Id.*

Several months later, on January 21, 2005, plaintiff completed an ARF indicating that he was still experiencing pain in his right shoulder and that he was overdue for an MRI. *Id.* The written response indicated that an "appointment [was] scheduled for 2/11/05 to revisit concern." *Id.* Shortly thereafter, on January 26, 2005, plaintiff requested a physical from the medical staff. Records indicated that plaintiff was referred to the medical clinic February 1, 2005.

On Feburary 1, 2005, plaintiff completed an ARF complaining that he was informed by the medical staff that his MRI had been cancelled. *Id.* The February 9th written response to this ARF indicated that plaintiff was scheduled to be seen on February 11, 2005 to address his concerns. Defendant Mee signed the ARF on February 10th to confirm that the plaintiff's concern had been addressed by the medical department. *Id.*

Plaintiff filed additional ARFs on February 15, 2005 and March 16, 2005. The first complained that his appointment on February 11th "did not happen," to which the medical department responded that plaintiff was scheduled to see a physician on March 15, 2005, "for a reevaluation regarding MRI." *Id.* The second ARF complained that the March 15th appointment did not take place, to which the medical department responded that plaintiff was rescheduled for March 25th. The responses to these ARFs were not confirmed by defendant Mee, but rather another prison administrator, not a defendant in this case, who signed the forms.

On March 28, 2005, plaintiff filed his complaint in this matter. Also on March 28th, plaintiff was seen at sick call by Dr. Hanna complaining of right shoulder pain and a decreased range of motion. Riehm Aff. at 53. Plaintiff was prescribed Motrin with a plan to have an MRI of plaintiff's right shoulder as per the orthopedic physician. The record reflects that shortly

thereafter, on April 13, 2005, plaintiff completed a "Screening Checklist" from the MRI Center at Lawrenceville. Dep. Tr. at Ex. D-8.

On May 13, 2005, Dr. Hanna requested "x-rays of [plaintiff's] hip and what ever [sic] part of his cervical spine he was shot in" as part of an MRI screening. Riehm Aff. at EMR55. There is a notation in the chart that plaintiff "is to be seen on 5/17/05." *Id.* However, an entry was made on plaintiff's medical records on June 8, 2005, indicating that plaintiff refused a "doctor call for MRI screening." The note further states that plaintiff was "requested by doctor to come to medical several times. Never showed." The reason for plaintiff's refusal was noted as "unknown." *Id.* at EMR56.

The records show that plaintiff sought no further treatment for his shoulder injury, and plaintiff testified at his deposition on May 24, 2006, that the last time he spoke to anyone about getting an MRI was February of 2005. Dep. Tr. at 144.

II.  Discussion

A.  Standard of Review

To prevail on a motion for summary judgment, the moving party must establish "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The district court's task is to determine whether disputed issues of material fact exist, but the court cannot resolve factual disputes in a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

In determining whether a genuine issue of material fact exists, the court must view the facts in the light most favorable to the non-moving party and extend all reasonable inferences to that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Stephens v. Kerrigan*, 122 F.3d 171, 176-177 (3d Cir. 1997). The moving party always bears the

initial burden of demonstrating the absence of a genuine issue of material fact, regardless of which party ultimately would have the burden of persuasion at trial. *Celotex Corp. v. Catret*, 477 U.S. 317, 323 (1986). Once the moving party has met its opening burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id*. at 324. Thus, the non-moving party may not rest upon the mere allegations or denials of its pleadings. *Id*. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

Once the moving-party has demonstrated to the court the absence of a material fact at issue, the Supreme Court has stated that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . ." *Matsushita*, 475 U.S. at 586-87 (citations omitted). In other words, "[i]f the evidence [submitted by the non-moving party] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The Supreme Court has specifically recognized that:

> One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses, and [] that [the rule] should be interpreted in a way that allows it to accomplish this purpose."

*Celotex*, 477 U.S. at 323-24. Thus, "[w]hen the record is such that it would not support a rational finding that an essential element of the non-moving party's claim or defense exists, summary judgment must be entered for the moving party." *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 341 (3d Cir. 1990).

B.  Medical Defendants' Motion for Summary Judgment

1.  Failure to Exhaust Administrative Remedies

Pursuant to the Prisoner Litigation Reform Act ("PLRA"), a prisoner is required to exhaust all available administrative remedies prior to commencing an action under Section 1983. The PLRA provides that:

> No action shall be brought with respect to prison conditions under [Section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.  This exhaustion of all administrative remedies is mandatory.  *Booth v. C.O. Churner*, 532 U.S. 731, 739-41 (2001).  Even those remedies contained in prison handbooks that are not formally adopted must still be exhausted before a prisoner may file a complaint alleging claims under Section 1983.  *Concepcion v. Ways*, 306 F.3d 1347, 1355 (3d Cir. 2002).

The Medical Defendants allege that plaintiff did not exhaust the administrative remedies available to him with regard to the allegations in the Complaint because the relevant ARFs that plaintiff submitted "did not indicate any specific allegations of improper conduct with respect to any of the [Medical Defendants]," but rather, such forms "simply dealt with the plaintiff's inquiry as to the timetable for completion of his MRI."  Med. Def. Brf. at 26.  However, the primary grievance underlying plaintiff's complaint in this matter is his failure to receive an MRI. Additionally, plaintiff complained in several of the ARFs that he was experiencing unresolved pain in his shoulder and noted in two of the ARFs that he was not receiving proper medical attention.  Therefore, the Court finds that plaintiff substantially complied with the requisite grievance procedure and, therefore, did exhaust his administrative remedies before commencing the instant action.  *See Nyhuis v. Reno*, 204 F.3d 65, 77-78 (3d Cir.2000) ("[C]ompliance with the administrative remedy scheme will be satisfactory if it is substantial.").

2. Eighth Amendment Claims

Failure to provide adequate medical treatment to prisoners is a violation of the Eighth Amendment when it results from "deliberate indifference to a prisoner's serious illness or injury." *Estelle v. Gamble*, 429 U.S. 97, 104, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976); *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). Generally, "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67. To establish a claim for deliberate indifference to a medical condition, a plaintiff must prove that: (1) his medical condition posed "a substantial risk of serious harm;" and (2) defendant acted with deliberate indifference to that risk. *Farmer v. Brennan*, 511 U.S. 824, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Mere disagreements, even among doctors, over the type or amount of care provided do not state an Eighth Amendment claim. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir.1990). "Prisoners are not entitled to the best medical care available; they are merely guaranteed that their doctors will not be deliberately indifferent to their needs." *Gresh v. Berks Co.*, No. Civ. A. 00-5697, 2002 WL 1635394 at * 4 (E.D. Pa. 2004) (citing *Campbell v. Sacred Heart Hospital*, 496 F. Supp. 692, 695 (E.D. Pa. 1980)).

Although plaintiff in the present case was unsatisfied with the level of relief provided by the treatment prescribed, "[u]nsuccessful medical treatment does not give rise to a § 1983 cause of action." *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Undisputed medical records and testimony of plaintiff himself demonstrate that plaintiff was provided prompt treatment for his medical complaints, including medication, consultations with a specialist, and modifications in work and bunk assignments. Medical treatment of a prisoner violates the Eighth Amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970).

"Deliberate indifference ... requires obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (internal quotes and citations omitted). Plaintiff has failed to provide evidence that could raise any genuine issue of material fact as to these claims.

Plaintiff's complaint centers on his allegation that he did not receive an MRI when he felt he should have one. Although certain of plaintiff's doctors wanted to have an MRI done, it was determined that the MRI could wait pending further evaluation of plaintiff's condition. It is well-established that neither a prisoner's disagreement with his doctor's treatment plan nor disagreement among doctors give rise to a constitutional claim. *White*, 897 F.2d at 110. Even if, as plaintiff implies, it was negligent for the medical staff to treat plaintiff without performing an MRI, mere medical malpractice does not violate the Eighth Amendment. *Estelle*, 429 U.S. at 106.

Moreover, it is not a constitutional violation for prison authorities to consider the cost implications of various procedures, which inevitably may result in various tests or procedures being deferred unless absolutely necessary. The deliberate indifference standard "does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society." *Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997). *See also, Brightwell v. Lehman*, 2006 WL 931702, *8 (W.D. Pa. April 10, 2006) ("Resources are not infinite and reasonable allocation of those resources, taking into account cost, does not amount to deliberate indifference even if a prisoner does not receive the most costly treatments or his treatment of choice.")

It is undisputed is that plaintiff underwent various diagnostic tests, including x-rays, and received continuous medical care and treatment for his complaints of shoulder pain. Indeed,

13

plaintiff was offered certain treatments -- hydrocortisone shots, therapy and surgery (in addition to the medication and analgesic balm he had already received) -- which he refused. *See* Pl. Dep. Tr. at 120-28. Plaintiff's belief that the treatment he was receiving was inadequate or that he should have received an MRI is simply insufficient to establish "deliberate indifference."

With respect to defendant Malaka Umrani, R.N., there is no evidence in the record that she was ever involved in the clinical treatment of plaintiff. Rather, her only involvement with plaintiff was that she provided written responses to two administrative request forms submitted by plaintiff dated December 14, 2003 and July 5, 2004, respectively. In the first, plaintiff complained he was "[n]ot receiving proper medical attention," to which Nurse Umrani responded by stating that plaintiff had been seen by a physician on December 8, 2003, and diagnosed with a contusion to the right shoulder. Plaintiff complains in the second form dated July 5, 2004, that he had not gotten an MRI, and Nurse Umrani's response states that plaintiff is being scheduled for an x-ray which must be done prior to any MRI. On this record plaintiff has not established that there exists a question of fact regarding any deliberate indifference on the part of Nurse Umrani.

With respect to Dr. Achebe, medical records show that Dr. Achebe saw plaintiff one time for his condition, on December 8, 2003. Dr. Achebe diagnosed a contusion, prescribed Motrin for the pain and discharged plaintiff from the infirmary. There simply is no basis to find that Dr. Achebe was deliberately indifferent to any serious medical need of plaintiff.

Likewise there is no evidence that Dr. Chang violated plaintiff's constitutional rights. On the date that plaintiff was injured, Dr. Chang received a phone call from the medical unit for orders for treating plaintiff's injury. Dr. Chang advised the nurse on duty to apply a sling, medicate with Darvocet as needed, admit plaintiff to the infirmary, and reevaluate in the

morning. There is no evidence on which to base a finding of deliberate indifference on the part of Dr. Chang.

Last, Dr. Talbot provided care and treatment for plaintiff's injury on numerous occasions. The record shows that Dr. Talbot evaluated plaintiff's complaints and provided treatment including medication as well as referrals to a specialist. There is no evidence that Dr. Talbot deliberately indifferent to any medical need of plaintiff.

In sum, viewing all evidence in the light most favorable to plaintiff, no trier of fact could find that the medical care provided by the Medical Defendants was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Gittlemacker*, 428 F.2d at 6. Accordingly, the Medical Defendants' motion for summary judgment shall be granted.

C.  Defendant Mee's Motion for Summary Judgment

Defendant Mee argues that he is entitled to summary judgment in his favor because (1) Mee was not deliberately indifferent to plaintiff's medical needs; and (2) plaintiff's complaint as to Mee is improperly based upon the theory of respondeat superior.[2] Defendant's response to Mee's motion is a short letter stating that in opposition plaintiff "shall rely on [Judge Chesler's] March 2, 2006 opinion and order," which denied Mee's earlier motion for summary judgment.[3] However, plaintiff's response ignores the fact that a substantial amount of discovery has been undertaken in the case since Judge Chesler rendered his opinion.

A nonmedical supervisor such as Mee may be liable under the Eighth Amendment only if

---

[2] Because of the its decision with regard to Mee's first argument, the Court does not reach Mee's *respondeat superior* argument.

[3] Mee was granted leave to file this summary judgment motion by Order dated June 15, 2006.

he had knowledge of or reason to know about alleged medical mistreatment. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir.2004). As noted above, plaintiff was under the continuous care of medical professionals who, the evidence establishes, were not deliberately indifferent to plaintiff's medical needs. Therefore, there was no medical mistreatment that Mee could have been aware of. *See id.* Consequently, Defendant Mee's motion for summary judgment shall be granted.

III.  Conclusion

      For the reasons discussed above defendants' motions shall be granted. An appropriate order shall follow.

                                              /s/ JOEL A. PISANO
                                              Joel A. Pisano
                                              United States District Judge

Dated: February 8, 2007